IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DEGERALD R. WILSON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. H-08-01392 |
| | § | |
| MICHAEL J. ASTRUE, Commissioner of | § | |
| Social Security Administration, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Before the Court in this social security appeal is Plaintiff's Motion for Summary Judgment (Document No. 33) and Defendant's Cross Motion for Summary Judgment and Memorandum in Support (Document Nos. 34 & 35). Having considered the cross motions for summary judgment, the administrative record, and the applicable law, the Court ORDERS, for the reasons set forth below, that Defendant's Motion for Summary Judgment is GRANTED, Plaintiff's Motion for Summary Judgment is DENIED, and the decision of the Commissioner is AFFIRMED.

**I.      Introduction**

Plaintiff DeGerald Wilson brings this action pursuant to Section 205(g) of the Social Security Act ("Act"), 42 U.S.C. § 405(g), seeking judicial review of an adverse final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his applications for disability insurance benefits and supplemental security income benefits. Wilson contends that Administrative Law Judge ("ALJ") erred in not finding his mental impairments and lumbar spine condition disabling. The Commissioner, in contrast, contends that there is substantial evidence in the record to support the ALJ's decision, and that the decision comports with applicable law and should

therefore be affirmed.

## II.     Administrative Proceedings

On May 7, 2004, Wilson applied for disability insurance benefits and supplemental security income benefits, alleging a disability onset date of December 31, 2003, due to a mental defect, schizophrenia, and a lumbar spine condition. (Tr. 14, 17, 91-93, 179, 413-415). The Social Security Administration denied the application at the initial and reconsideration stages. After that, Wilson requested a hearing before an ALJ. The Social Security Administration granted his request and the ALJ, Karen McCoy, held a hearing on June 7, 2006, where Wilson appeared and testified on his own behalf. (Tr. 434-483). On April 23, 2007, the ALJ issued a decision finding Wilson not disabled within the meaning of the Act. (Tr. 11-21).

Wilson sought review of the ALJ's adverse decision with the Appeals Council. The Appeals Council will grant a request to review an ALJ's decision if any of the following circumstances are present: (1) it appears that the ALJ abused his discretion; (2) the ALJ made an error of law in reaching his conclusion; (3) substantial evidence does not support the ALJ's actions, findings or conclusions; or (4) a broad policy issue may affect the public interest. 20 C.F.R. § 404.970; 20 C.F.R. § 416.1470. After considering Wilson's contentions in light of the applicable regulations and evidence, the Appeals Council, on November 8, 2007, denied Wilson's request for review. The ALJ's findings and decision thus became final.

Wilson filed a timely appeal of the ALJ's decision. Both the Commissioner and Wilson filed Motions for Summary Judgment (Document Nos. 33 & 34). This appeal is now ripe for ruling. The evidence is set forth in the record, pages 1-483. There is no dispute as to the facts contained therein.

**III.     Standard for Review of Agency Decision**

The court's review of a denial of disability benefits is limited "to determining (1) whether substantial evidence supports the Commissioner's decision, and (2) whether the Commissioner's decision comports with relevant legal standards." *Jones v. Apfel*, 174 F.3d 692, 693 (5th Cir. 1999). Indeed, Title 42, Section 405(g) limits judicial review of the Commissioner's decision: "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  The Act specifically grants the district court the power to enter judgment, upon the pleadings and transcript, "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing" when not supported by substantial evidence. 42 U.S.C. § 405(g).  While it is incumbent upon the court to examine the record in its entirety to decide whether the decision is supportable, *Simmons v. Harris*, 602 F.2d 1233, 1236 (5th Cir. 1979), the court may not "reweigh the evidence in the record, nor try the issues de novo, nor substitute [its] judgment for that of the [Commissioner], even if the evidence preponderates against the [Commissioner's] decision." *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988); *see also Jones*, 174 F.3d at 693; *Cook v. Heckler*, 750 F.2d 391, 392-93 (5th Cir. 1985).  Conflicts in the evidence are for the Commissioner to resolve. *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992).

The United States Supreme Court has defined "substantial evidence," as used in the Act, to be "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229 (1938)).  Substantial evidence is "more than a mere scintilla and less than a preponderance." *Spellman v. Shalala,* 1 F.3d 357, 360 (5th Cir. 1993).  The evidence must create

more than "a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983) (quoting *Hemphill v. Weinberger*, 483 F.2d 1137 (5th Cir. 1973)).

## IV.     Burden of Proof

An individual claiming entitlement to disability insurance benefits under the Act has the burden of proving his disability. *Johnson,* 864 F.2d at 344. The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment must be proven through medically accepted clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3). The impairment must be so severe as to limit the claimant in the following manner:

> he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied to work.

42 U.S.C. § 423(d)(2)(A). The mere presence of an impairment is not enough to establish that one is suffering from a disability. Rather, a claimant is disabled only if he is "incapable of engaging in any substantial gainful activity." *Anthony*, 954 F.2d at 293 (quoting *Milam v. Bowen,* 782 F.2d 1284, 1286 (5th Cir. 1986)).

The Commissioner applies a five-step sequential process to decide disability status:

1.     If the claimant is presently working, a finding of "not disabled" must be made;

2.     If the claimant does not have a "severe impairment" or combination of

>   impairments, [he] will not be found disabled;
>
> 3.  If the claimant has an impairment that meets or equals an impairment listed in Appendix 1 of the Regulations, disability is presumed and benefits are awarded;
>
> 4.  If the claimant is capable of performing past relevant work, a finding of "not disabled" must be made; and
>
> 5.  If the claimant's impairment prevents [him] from doing any other substantial gainful activity, taking into consideration [his] age, education, past work experience and residual functional capacity, [he] will be found disabled.

*Anthony,* 954 F.2d at 293; *see also Leggett v. Chater,* 67 F.3d 558, 563 n.2 (5th Cir. 1995); *Wren v. Sullivan,* 925 F.2d 123, 125 (5th Cir. 1991). Under this formula, the claimant bears the burden of proof on the first four steps of the analysis to establish that a disability exists. *McQueen v. Apfel,* 168 F.3d 152, 154 (5th Cir. 1999). If he is successful, the burden shifts to the Commissioner, at step five, to show that the claimant can perform other work. *Id.* Once the Commissioner shows that other jobs are available, the burden shifts, again, to the claimant to rebut this finding. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990). If, at any step in the process, the Commissioner determines that the claimant is or is not disabled, the evaluation ends. *Leggett,* 67 F.3d at 564.

Here, the ALJ determined, in her April 23, 2007, decision, that Wilson was not disabled at step four. In particular, the ALJ determined that Wilson was not presently working (step one); that Wilson's lumbar spine condition was not a severe physical impairment, and that Wilson's mental impairment was severe but not disabling (step two); that Wilson's mental impairment did not meet or equal an impairment listed in Appendix 1 of the Regulations (step three); and that Wilson was capable of performing his past work (step four). In this appeal, the Court must determine whether substantial evidence supports the step four finding, and whether the ALJ used the correct legal

standards in arriving at that conclusion. In addition, the Court must determine whether the additional medical records presented by Wilson, which he claims are relative to his diagnosed mental illness, constitutes "new" evidence warranting a remand under 42 U.S.C. § 405g.

## V.     Discussion - "New" Evidence

Under 42 U.S.C. § 405(g), the Court has the power to enter "upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." The Court does not have the authority to reverse or modify the decision of the Commissioner based on its consideration of new evidence. *Haywood v. Sullivan*, 888 F.2d 1463, 1471 (5th Cir. 1999). Rather, § 405(g) only authorizes the Court to remand the case to the Commissioner for further action and the taking of additional evidence. Such a remand is justified when there has been a showing that there is "new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g); *McQueen*, 168 F.3d at 156.

A remand is supportable under § 405(g) on the basis of new evidence when it has been shown that (1) there is "new" evidence; (2) the evidence is "material;" and (3) good cause exists for failing to present the evidence at the administrative level. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *Leggett*, 67 F.3d at 566. Evidence which is merely cumulative of that already in the administrative record is not "new" evidence that would support a remand under § 405(g). *See Pierre v. Sullivan*, 884 F.2d 799, 803 (5th Cir. 1989); *Bradley v. Bowen*, 809 F.2d 1054, 1058 (5th Cir. 1987). Evidence that does not relate to the time period for which benefits were denied, as well as evidence of the deterioration of a previously non-disabling condition when the deterioration occurred after the period for which benefits were sought, is not "material" evidence. *Ripley*, 67 F.3d at 555, n.14; *Smith v.*

*Apfel*, 87 F.Supp.2d 621, 627 (W.D. La. 2000).  Similarly, when the consideration of the allegedly "new evidence" would not, based on a reasonable probability, result in a different disability determination, the evidence is not "material".  *Ripley*, 67 F.3d at 555; *Latham v. Shalala*, 36 F.3d 482, 483 (5th Cir. 1994).  The fact that evidence is "new", meaning that it did not exist at a point in time such that it could have been incorporated into the administrative record, does not, by itself, constitute good cause for failing to incorporate such evidence into the administrative record.  *Pierre*, 884 F.2d at 803 ("The mere fact that a medical report is of recent origin is not enough to meet the good cause requirement.").

The newly submitted evidence upon which Plaintiff seeks a remand is: (1) Psychotherapy during 2008 by Dr. Kim James; (2) Psychiatry visits to the University Health Center of the University of Houston, Dr. Arfa, in June, 2008 and May, 2009; (3) receipt of student disability services while in attendance at the University of Houston in 2001, 2002 and 2008; and (4) Harris County Gold Card assistance for patients of low income in 2009.  *See* Document No. 33.  Wilson contends that the additional evidence is relevant to his pre-existing, diagnosed mental illness.  Three of the four references deal with therapy or care received after the time period for which Wilson seeks benefits and are not "material" evidence, even if they show a deteriorating condition.  *Ripley*, 67 F.3d at 555, n.14; *Smith v. Apfel*, 87 F.Supp.2d 621, 627 (W.D. La. 2000).  Wilson does offer evidence of receiving student disability services in 2001 and 2002, prior to the alleged disability onset date of December 31, 2003.  During the hearing, however, Wilson explained the disability services as providing a note taker and additional time to complete exams or assignments. (Tr. 452).  Wilson further testified he did not receive these services while taking courses at Texas Tech, but was still able to pass his courses with B's and C's. (Tr. 445, 452).  Based on a reasonable probability, the inclusion

of this evidence is unlikely to result in a different disability determination. Therefore, the evidence of receiving student disability services in 2001 and 2002 does not constitute "material" evidence. Accordingly, there is no "new evidence" upon which to remand this case to the Commissioner.

## V.    Discussion - Substantial Evidence

Given that there is no new evidence which would warrant a remand of this case to the Commissioner, it must be determined whether there is substantial evidence in the record to support the ALJ's decision that Wilson is not disabled within the meaning of the Act. In determining whether substantial evidence supports the ALJ's decision, the court weighs four factors: (1) the objective medical facts; (2) the diagnosis and expert opinions of treating physicians on subsidiary questions of fact; (3) subjective evidence of pain as testified to by the plaintiff and corroborated by family and neighbors; and (4) the plaintiff's educational background, work history and present age. *Wren,* 925 F.2d at 126.

### A.  Objective Medical Facts

The objective medical evidence, which dates in the record from May, 2000, shows that Wilson suffers from a lumbar spine condition and mental impairments, including a psychotic disorder not otherwise specified, a history of schizophrenia and a history of alcohol, cocaine and cannabis abuse.

#### 1.    Lumbar Spine Condition

With respect to Wilson's lumbar spine condition, the objective medical evidence shows that Wilson has no "severe" physical limitations, within the meaning of *Stone v. Heckler*. *See* 752 F.2d 1099 (5th Cir. 1985). Although Wilson has sought medical help for lower back pain, no significant abnormalities are documented. (Tr. 17, 280-81, 283, 346-48, 362-63). There is no documentation in the medical records revealing an objective medical finding suggesting a "severe" impairment for

Wilson's back pain.

Furthermore, Wilson's back pain has not prevented him from conducting routine daily activities, such as cooking, grocery shopping, walking and taking care of himself, as well as working and attending college. (Tr. 18, 20, 342). Wilson has not received routine treatment for his back pain. (Tr. 18). In fact, the Wilson refused an offer for Motrin in March, 2006. (Tr. 361). Wilson contended he did not take medication due to possible side effects he has read about, but not necessarily experienced. (Tr. 20).

### 2. Mental Impairments

With respect to Wilson's mental impairments, that condition appears to have been diagnosed in 1991, and affirmed by multiple physicians through 2004. (Tr. 260-265, 267, 286, 329, 334-35, 341-43). Between 2001 and 2004, the physicians diagnosed Wilson with multiple disorders, including a psychotic disorder not otherwise specified and a history of schizophrenia. (Tr. 17) However, the record reflects no more than moderate functional limitations from the disorders, even when they are amplified by Wilson's history of alcohol, cocaine and cannabis abuse, and the lack of treatment sought by Wilson for the disorders further supports the ruling. (Tr. 17-18). While all of the medical records are taken into consideration, the focus of the ALJ's analysis is from the time period following December 31, 2003, the date Wilson's alleged disability began, as indicated on his most recent application. (Tr. 30-33)

The record shows Wilson was seen in February, 2003 after consuming $200 worth of alcohol and drugs and appeared suicidal and delusional. In his visit to R. Preston Shaw, M.D. in August, 2004, Wilson was relatively stable. (Tr. 341-44, 373). Wilson was enrolled in summer courses at Texas Tech University, and had successfully completed eleven hours the previous spring, earning B's

and C's. (Tr. 341-42). Dr. Shaw noted Wilson was well groomed, fully oriented and maintained focus throughout the evaluation. (Tr. 342-43). Dr. Shaw characterized Wilson's intelligence as high average. (Tr. 343). Wilson indicated he had used drugs the day prior to the evaluation. (Tr. 342).

Dr. Shaw diagnosed Wilson with alcohol abuse, cocaine abuse, cannabis abuse and a psychotic disorder not otherwise specified by history, ruled out as substance induced disorder by history. (Tr. 343). Wilson was further diagnosed with a dependant personality disorder and was assigned a global assessment functioning ("GAF") score of 70. (Tr. 343). According to the Diagnostic and Statistical Manual of Mental Disorders, a GAF score of 61-70 indicates only the presence of mild symptoms, or that there are some difficulties in social, occupational or school functioning, but the person is generally functioning pretty well and has some meaningful interpersonal relationships. (Tr. 18); *see also Diagnostic and Statistical Manual of Mental Disorders* 32-34 (4th ed.-TR 2000).

Although Wilson claims disability due in part to mental illness since December 31, 2003, he has not sought out much treatment for his illness. (Tr. 18). Wilson was seen in September, 2005 and appeared disorganized and psychotic, but was not on any medications, nor did he want any medications. (Tr. 18, 367-68). In fact, the examiner noted Wilson was well groomed and his appearance was within normal limits and he was coherent, although he spoke of delusional, grandiose and persecutorial thoughts. (Tr. 18, 369). Wilson admitted to using drugs socially and proclaimed he was a "professional drinker." (Tr. 18, 369). The record reflects Wilson did not receive any psychiatric follow up treatment and had not taken any psychiatric medications, when he sought treatment for back pain in March, 2006. (Tr. 18, 362).

Upon this record, the objective medical evidence supports the ALJ's conclusion that Wilson is not disabled. Having reviewed the objective medical evidence in the record, it is clear that Wilson has mental impairments and a non-severe back impairment, but none of his impairments, either singly or in combination, meet all the requirements of any presumptive disability listing. The ALJ ruled Wilson suffers from a severe mental impairment, but a non-severe lumbar spine condition. "[A]n impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Stone v. Heckler,* 752 F.2d 1099, 1101 (1985). Here, there is no objective medical evidence that Wilson's lumbar spine condition has had any significant effect on his ability to engage in work related activities.

As for Wilson's mental impairments, while the objective medical shows that he suffers from a psychotic disorder not otherwise specified and a history of schizophrenia, Wilson has sought infrequent relief for his impairments and voluntarily chooses not to take medication which would reduce the effects of the impairment. Regardless of this lack of treatment, Wilson has been able to take care of himself, work, perform routine daily activities and succeed in college level courses. The objective evidence supports the conclusion that Wilson is not disabled as a result of his lumbar spine condition and mental impairments. Therefore, the objective medical evidence factor weighs in favor the of the ALJ's decision.

### B. Diagnosis and Expert Opinions

The second element considered is the diagnosis and expert opinions of treating and examining physicians on subsidiary questions of fact. Unless good cause is shown to the contrary, "the opinion,

diagnosis and medical evidence of the treating physician, especially when the consultation has been over a considerable length of time, should be accorded considerable weight." *Perez v. Schweiker,* 653 F.2d 997, 1001 (5th Cir. 1981). For the ALJ to give deference to a medical opinion, however, the opinion must be more than conclusory and must be supported by clinical and laboratory findings. *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985); *Oldham v. Schweiker*, 660 F.2d 1078 (5th Cir. 1981). Furthermore, regardless of the opinions and diagnoses and medical sources, "'the ALJ has sole responsibility for determining a claimant's disability status.'" *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995) (quoting *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990)).

There are two medical opinions in the record: one from two doctors who reviewed Wilson's medical records, and one from the medical expert who testified at the administrative hearing. Both medical opinions concluded that Wilson's impairments were not disabling. There are no medical opinions in the record from any of Wilson's treating physicians regarding his physical limitations.

A RFC assessment was completed by M. Chappuis, Ph.D. and J. Anderson, M.D., State agency psychological and medical consultants, on September 8, 2004, based upon a review of Wilson's medical records. (Tr. 324-26). Drs. Chappuis and Anderson concluded that Wilson can understand, remember and carry out detailed, but not complex instructions, make decisions, attend and concentrate for extended periods of time and respond appropriately to changes in routine work setting. Drs. Chappuis and Anderson further noted Wilson's impairment "allegations are not supported" by the medical records in the file. (Tr. 339).

Dr. Cohen, the medical expert engaged by the ALJ, testified that Wilson's mental impairments were treatable with medication and amplified by substance abuse, and that he saw no evidence of Wilson ever receiving any anti-psychotic medications. (Tr. 443-44). Wilson testified he chose not

to take medications based on side effects he had read about, but not necessarily experienced. (Tr. 18, 444). Dr. Cohen noted Wilson was given a moderate rating when dealing with detailed material, but claimed that was generous and believed the record did not merit a range of more than slight to moderate. (Tr. 444-47).

The ALJ, finding the testimony of the medical expert to be credible and consistent with the objective medical evidence, based her RFC determination on the testimony of Dr. Cohen. In so doing, the ALJ thoroughly discussed the objective medical evidence as well as the medical expert's explanation of the objective medical evidence. (Tr. 17-19). In fact, the ALJ ruled Wilson has mild to moderate limitations in his ability to respond appropriately to work stress and to interact appropriately to co-workers, supervisors and the public, but has no exertional limitations affecting his ability to lift or carry, walk, climb, kneel, crouch or crawl. (Tr. 19) Given the thoroughness of the ALJ's discussion of the objective medical evidence, and the ALJ's reliance on the expert medical opinion of Dr. Cohen, whose opinion was found to be credible and consistent with the medical evidence as a whole, the diagnosis and expert medical opinion factor also supports the ALJ's decision.

### C. Subjective Evidence of Pain

The third element considered is the subjective evidence of pain and disability, including the claimant's testimony and corroboration by family and friends. Not all pain and subjective symptoms are disabling, and the fact that a claimant cannot work without some pain or discomfort will not render him disabled. *Cook,* 750 F.2d at 395. In an appeal of a denial of benefits, the Act requires this Court's findings to be deferential. The evaluation of evidence concerning subjective symptoms is a task particularly within the province of the ALJ, who has the opportunity to observe the claimant.

*Hames v. Heckler,* 707 F.2d 162, 166 (5th Cir. 1983).

At the hearing before the ALJ, Wilson testified he has two bachelor's degrees and over 25 years of work experience, including clerical, general office, customer service and retail. (Tr. 451,453). He testified he stopped taking courses at Texas Tech, primarily due to a loss in financial aid, but continues to take college level courses. (Tr. 452, 470). The ALJ and Wilson discussed his work experience, including the date, duration and type of positions which Wilson held. (Tr. 454-59). Wilson testified the majority of his job experience is temporary work and the longest he has held a position is six months. Wilson suggested the reason he has not been able to hold down a position longer might be based on discrimination or workman's compensation issues. (Tr. 458-59).

Wilson testified he does not have issues getting around by walking and use of public transportation and has been able to take care of himself and cook his own meals. (Tr. 460, 467). He further testified he performs chores around the house, such as doing dishes, washing clothes and taking out the trash. (Tr. 467). The ALJ found Wilson's complaints and subjective symptoms of pain not entirely credible. In so doing, the ALJ wrote:

> The Administrative Law Judge has considered the claimant's subjective allegations. However, the objective evidence, his longitudinal treatment history, and his daily activities are inconsistent with the presence of disabling impairments and suggest that he remains capable of performing work activity within the above found parameters on a regular basis and his allegations are thus considered to be not entirely credible.
>
> The claimant alleges disability due to mental illness but the record does not document that he has experienced persistent and debilitating symptoms for any period of 12 continuous months since the alleged onset date of disability. Although treatment notes dated February 4, 2003 (or prior to the alleged onset date of disability) reveal that the claimant was delusional and suicidal after consuming $200 of drugs and alcohol the night before (Ex. C23F9), Dr. Shaw's October 2004 examination shows that he was passing his college courses, that he was independent in his daily activities, and that his mental status examination was largely unremarkable even though he

> reported continued alcohol and drug use at that time. (Ex. C16F103-103). The Administrative Law Judge notes that the claimant testified he dropped out of his college courses at Texas Tech the following semester but that he explained this was due to a loss of financial assistance and not the result of his impairments. The undersigned notes that the claimant also testified that he is registered to start classes at UTSA pending financial aid approval. He is working at present (C16B) even though he denied taking any medications. The undersigned concludes from this evidence that the claimant's mental impairments, although exacerbated at times by his alcohol abuse and episodic drug use, generally cause him no more than mild to moderate functional limitations.
>
> Such a conclusion is consistent with the GAF score of 70 given the claimant by Dr. Shaw which indicates the claimant has only mild symptoms and that he is generally functioning fairly well in most respects. The undersigned notes that M. Chappuis, Ph.D. and J. Anderson, M.D., State agency psychological and medical consultants completed a Mental Residual Functional Capacity Questionnaire to reflect that the claimant has moderate limitations on his social interaction and on his ability to sustain concentration and persistence. (Ex. C14F). However, Dr. Cohen testified his opinion is not consistent with the record evidence, particularly Dr. Shaw's findings and opinions. The undersigned agrees and thus did not adopt the opinions of Drs. Chappuis and Anderson in concluding that the claimant retains the mental ability to perform work within the above found parameters.
>
> The claimant also alleges disability due to back pain. However, the objective evidence does not document the presence of a "severe," let alone "disabling" impairment. The claimant has received no routine treatment for this complaint during the time at issue. Indeed, the record reflects that the claimant refused an offer of Motrin, a non-steroidal anti-inflammatory drug on March 29, 2006. (Ex. C22F2). The claimant testified that he is not taking any medications due to concerns about side effects that he has read about (but apparently not experienced). The claimant's allegations of disabling back pain cannot be reconciled with the absence of objective evidence of a debilitating back condition, the absolute absence of treatment, even medications, for this complaint, and his daily activities which have included working and attending college. These allegations are exaggerated and are not at all credible. The claimant has no physical limitations at all.

(Tr. 19-20).

Credibility determinations, such as that made by the ALJ in this case in connection with Wilson's subjective complaints, are generally within the province of the ALJ to make. *See Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994) ("In sum, the ALJ 'is entitled to determine the credibility

15

of medical experts as well as lay witnesses and weigh their opinions accordingly.'") (quoting *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985)), *cert. denied*, 514 U.S. 1120 (1995). Because the ALJ supported his credibility determination with references to the medical evidence and Wilson's testimony about his daily activities, and because the ALJ did not rely on any improper factors, the subjective evidence factor also weighs in favor of the ALJ's decision.

### D. Education, Work History and Age

The fourth element considered is the claimant's educational background, work history and present age. A claimant will be determined to be disabled only if the claimant's physical or mental impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(a).

At the time of the administrative hearing on June 7, 2006, Wilson was 40 years old and had two bachelor degrees, including 247 semester hours with 30 hours in psychology. After having determined that the medical evidence did not show either debilitating back pain or mental impairment, the ALJ questioned a vocational expert regarding jobs Wilson previously performed. "A vocational expert is called to testify because of his familiarity with job requirements and working conditions. 'The value of a vocational expert is that he is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed.'" *Vaughan v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995) (quoting *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir. 1986)). Additionally, the vocational expert and the ALJ discussed the types of jobs available for Wilson to perform, specifically over 10,000 telemarketing jobs and over 15,000 security jobs in Texas. (Tr. 481). Wilson testified he felt the vocational expert's testimony regarding Wilson's work experience

was accurate. (Tr. 482).

Given the vocational expert's testimony, as well as the support in the medical records for the ALJ's conclusion that Wilson could, despite his limitations and impairments, perform a range of past relevant work, including work as an office clerk, tutor, telemarketer, inventory clerk and security officer, this factor also weighs in favor of the ALJ's decision that Wilson is not disabled within the meaning of the Act.

### VI. Conclusion and Order

Considering the record as a whole, the undersigned is of the opinion that the ALJ and the Commissioner properly used the guidelines propounded by the Social Security Administration, which directs a finding of "not disabled" on these facts. *See Rivers v. Schweiker*, 684 F.2d 1144 (5th Cir. 1982). As all the relevant factors weigh in support of the ALJ's decision, and as the ALJ used the correct legal standards, the Court

ORDERS that Defendant's Motion for Summary Judgment (Document No. 34) is GRANTED, Plaintiff's Motion for Summary Judgment (Document No. 33) is DENIED, and the decision of the Commissioner is AFFIRMED.

Signed at Houston, Texas, this _____ day of _____, 2009.

Frances H. Stacy
United States Magistrate Judge